AMARILLO EQUITY INVESTORS, INC. & Amarillo Equity Investors 77-7, Inc., Appellants,

v.

CRAYCROFT LACY PARTNERS, Appellees.

No. 2-82-138-CV.

Court of Appeals of Texas, Fort Worth.

May 26, 1983.

Rehearing Denied July 14, 1983.

Marvin W. Jones, Gibson, Ochsner & Adkins, Amarillo, for appellants.

Dan E. Martens, Miller, Hiersche & Martens, Dallas, for appellees.

Before FENDER, C.J., and HUGHES and JORDAN, JJ.

## OPINION

FENDER, Chief Justice.

This was a suit to recover on two accounts due for architectural services. The debtor counterclaimed for usury based on interest charged on the balance due. The suit was tried before the court without a jury, and the court made findings of fact and conclusion of law. Judgment was entered in favor of the creditor. Both the debtor and creditor appeal from the judgment.

We reverse and render in part and remand in part.

Amarillo Equity Investors, Inc., was the general partner in Amarillo Equity Investors 77–7, Ltd., a Texas limited partnership formed to develop and build apartment projects. The limited partnership, by and through the corporation, entered into a written agreement with Craycroft-Lacy & Partners, an architectural general partnership specializing in commercial multi-family structures, whereby Craycroft-Lacy was to provide architectural services for Amarillo Equity with respect to an apartment project contemplated in Arlington, Texas. The written contract for these services did not provide for the payment of interest with respect to charges made for these services.

Amarillo Equity later requested that Craycroft-Lacy provide architectural services for an apartment project in Pampa, Texas using a modified version of the plans developed for the Arlington project. No written contract was ever executed regarding this project, but an oral agreement was made that the Pampa project would be governed by the previous written agreement.

Craycroft-Lacy performed the architectural services contracted for and such work was received and accepted by Amarillo Equity. Craycroft-Lacy billed Amarillo Equity for services rendered in both projects using forms which stated, "Terms: Net 30 days, 1% per month after 30 days." Amarillo Equity has paid $16,300.00 and reimbursable expenses on the Arlington project and only the reimbursable expenses on the Pampa project. The balance due under the contract was $18,588.17 on the Arlington project and $6,400.00 on the Pampa project.

Statements on the accounts were sent and received from approximately July 1, 1979 but Craycroft-Lacy began charging interest only after October 5, 1979. The interest charged was at a rate of one percent (1%) per month as stated on Craycroft-

Lacy's bill forms. The interest charges were added to the principal balance. In succeeding months, the interest was charged on this new principal balance resulting in interest charges at a rate of twelve and six tenths percent (12.6%) per annum on both accounts.

Craycroft-Lacy brought this suit to recover the balance due on these accounts and for prejudgment interest at one percent (1%) per month. Amarillo Equity counterclaimed, alleging usury as the one percent (1%) per month interest charged was not in the contract and was more than double the annual rate allowed by statute. At trial, the court rendered judgment in favor of Craycroft-Lacy for the balance due on the accounts due but found that there was no agreement concerning the rate of interest to be applied to the accounts. The court further ruled that in the absence of an agreement, Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (1982) applies and therefore added only a six percent (6%) interest to the judgment as prejudgment interest.

Amarillo Equity appealed claiming that it was entitled to the relief request in its counterclaim for usury because the interest charged was double the rate allowed by law. Craycroft-Lacy also appealed claiming the one percent (1%) interest charged as the evidence showed an agreement had been reached as to that specific rate and for its attorney's fees.

It is evident from the conclusions of law that the trial court felt that the parties had agreed to the charging of interest on the account balances and had only failed to agree to a specific rate of interest. The court then looked to Tex.Rev.Civ.Stat.Ann. art. 1302–2.09 of the Texas Miscellaneous Corporation Laws Act (1980) which allows corporations to agree to a rate of interest up to one and one-half percent (1½%) per month and found that the one percent (1%) charge was not usurious.

■ This finding was error. Where there is no agreement to a specific rate of interest, the statutory rate of six percent (6%) is read into the agreement and is the maximum rate of interest allowed on the transaction. Tex.Rev.Civ.Stat.Ann. art. 5069–1.03. A party charging more than six percent under such circumstances is subject to the statutory penalties provided in Tex. Rev.Civ.Stat.Ann. art. 5069–1.06. *Triton Oil and Gas Corporation v. Marine Contractors and Supply, Inc.,* 644 S.W.2d 443 (Tex. 1982). In the light of the trial court's finding of fact that there was no agreement concerning the rate of interest, the charging of 12.6% per annum by Craycroft-Lacy was usurious.

Article 1302–2.09, relied on by the trial court, reads in part:

Authority of Certain Corporations to Borrow Money

Notwithstanding any other provision of law, corporations, domestic or foreign, may agree to and stipulate for any *rate* of interest as such corporation may determine, not to exceed one and one-half percent (1½%) per month, . . . [Emphasis added.]

This statute also requires an agreement by the parties to a specific rate of interest. Therefore, it is not applicable to the present fact situation and will not render the Craycroft-Lacy's interest charge not usurious.

We also reject Craycroft-Lacy's claim that the evidence did establish an agreement for a specific rate of interest at 1% per month. Craycroft-Lacy had the burden of showing such an agreement. The only evidence of such agreement introduced by Craycroft-Lacy was the interest charging statements sent to Amarillo Equity and testimony from Craycroft-Lacy's senior partner, Jack Craycroft, that Amarillo Equity never complained of the charges and made a substantial payment on the account after the charges had appeared on the statements. Craycroft-Lacy asserts that this silence was evidence of acquiescence and agreement to the interest charges.

■ We disagree because the trial court expressly found that no agreement had been reached as to the rate of interest charged and this finding is supported by the record. There is no evidence of any conduct by Amarillo Equity indicating its ac-

ceptance of the interest charges. Mere payment of part of the amount due on the accounts is not evidence of such an acceptance. While it is true Amarillo Equity never complained of the interest charges, there is also no evidence to show that they ever paid them. The trial court's finding must stand. *See Triton, supra,* p. 445; *Preston Farm & Ranch Supply v. Bio-Zyme Enterprises,* 625 S.W.2d 295 (Tex.1981).

Accordingly, we overrule Craycroft-Lacy's cross-points and sustain Amarillo Equity's points of error. The trial court's findings of fact establish that Amarillo Equity is entitled to the penalties provided by Tex.Rev.Civ.Stat.Ann. art. 5069–1.06 for usury. Therefore, we reverse and render judgment for Amarillo Equity on its counterclaim, and remand to the trial court for a determination of the penalty and the amount of attorney's fees to which Amarillo Equity is entitled. Tex.R.Civ.P. 434.